Hey police and the court. My name is Carl Post. I'm appearing on behalf of Michael Kelly. I'd like to reserve three minutes for rebuttal. Michael Kelly filed this lawsuit against his former employer, the Boeing Company, alleging claims in violation of the APA and equivalent, which is the Oregon Rehabilitation Act, the FMLA, Oregon's Family Leave Act, and common law wrongful discharge. He has an IED claim that's not on appeal. Just very brief, I'll just touch on a little bit of the facts and then move into the claims and discuss more facts as part of each claim. Mr. Kelly was diagnosed with celiac disease around 2010 and also with gout. He also has an enlarged prostate. The celiac disease and enlarged prostate substantially impair his ability to urinate and as such his waist elimination would be considered a disability under both the ADA and Oregon state law. All of Kelly's claims were dismissed on summary judgment and all inferences should be viewed in his favor. And the issue here is whether it is appropriate for the district court to dismiss these claims or whether these issues were more appropriately left to the jury to decide. And our argument is that this should be decided by the jury because they're more capable of weighing the evidence and watching the people You're fading out, Mr. Post. Volume? We're losing you. Okay, we can hear you now. Stay a little bit closer. Okay, there you go. Sorry about that. So tell us where the district court erred in granting summary judgment on behalf of your client's claims. What was the error? So the first error is the failure to accommodate and failure to engage in the interactive process. Mr. Kelly requested accommodations multiple times during the drug testing process that took place over a four-hour period of time. In order to prevail on a failure to accommodate, he needs to prove he is disabled, qualified, and a reasonable accommodation is... So was the employer required to immediately accommodate him at that time? Whether it needs to be immediate, I'm not sure, but certainly four hours is not... Well, maybe that was too dramatic there, immediate. But does the employer have to accommodate within that short period of time? Well, yes, because otherwise it makes the reasonable accommodation null and void because there's only a short window. Is the employer entitled to any notice at all? Well, he provided notice. Who did he ask for an accommodation? He notified, certainly notified Ms. Scroggins, who's an agent of the defendant, and they're liable for AMR's violations of the ADA as well as their own violations. She was the technician, the first and he also notified the HR lady, Ms. Muir, prior to and after when Mr. Edge became involved with the sampling. So at that point, HR was fully notified of it. What was the accommodation that he wanted? Well, he requested either a blood test, saliva or hair follicle testing instead of the urine testing. And there's nothing to show that these aren't reasonable, that these would not be reasonable accommodations. And as we pointed out, there would actually be more accurate testing and stuff that Mr. Kelly would not be able to adulterate. And so once we show that on its face, it's feasible or plausible, which it is, they were in Gresham. There's a hospital nearby that they could have gone to and done this. Then the only defense is on the test that he'd taken previously where he had urinated and into a cup. On this day or in the past? Well, on this day, we know there were three or four attempts, supposedly, right? Yeah, I believe it's in both of our fact patterns. I don't think there's a dispute. I believe there's around 15 maybe or something like that over a two-year period that he was able to provide a sample. However, the fact that an employee can do stuff at times does not eliminate the requirement to provide a reasonable accommodation when it is needed. This scenario, as we point out, in the fact pattern is different. It starts off in a cold room. He had recently discharged urination prior to being asked to do this after his shift had ended. And he was getting ready to leave to care for his wife, who ultimately died of cancer, to go home and care for her. So he's got additional factors going on here. They're asking him to provide multiple samples. He's got the stress of trying to get home in a snowstorm with his wife. All these combined. Is that accurate? They asked him to provide multiple samples. He provided samples that, at least on the first test, he was able to... He said, but then the cup didn't trigger the temperature sensor on the cup that would indicate that it was a valid test, right? Yes. And so in the past, perhaps he has been able to... It's pointed out that on the first try, he's able to urinate and fill a cup. But that's where then his disability comes in. When you're asking him to... Samples over this four-hour period, and he's attempting to do something, having problems with it. At that point, they're required to engage in the interactive process and provide some kind of accommodation. You can't just ignore. I mean, they completely ignored. But isn't there tension between that and then feeling that he's gaming the test and not being... Not playing by the rules. I mean, you've got the not body temperature urine, and then you've got this situation where he's observed going into the trash, pulling out socks. The socks have a tube, yellow tube with a blue cap. He's observed appearing to put the tube in his sleeve. Then he's observed pouring that tube into the collection cup. He does not emphatically or explicitly deny doing that. So isn't it reasonable to assume that any request for an accommodation is a pretext, especially in the context of signing this last chance agreement? Well, we don't agree with that. One, he does deny that he poured anything in the cup, and there's a dispute about that. Where does he say that he denied it? We pointed it out in our brief, I apologize, because it was brought up on summary judgment, and we did point out that he corrected himself in his deposition later on. And again, there's a dispute on whether or not Mr. Edge even observed the sample, as Mr. Kelly testified that the tube was outside. And he's not trying to game the system. He requested more accurate and testing that could not be gamed. You can't game a blood test or a hair follicle. If he had drugs in his system, those are going to remain in his system, specifically the hair follicle, for days. And he would be tested, his hair follicle would show all of his past drug use if it was brought up. So it doesn't make sense to avoid having a urine test done that he requests a more accurate testing method. And again, if they would have provided this accommodation, it's our position that he would have passed the test and he would still be employed by Boeing. You just discussed the error that you believe the district court made with respect to the ADA. So we had another claim on which the district court granted summary judgment. The FMLA and the related statutory provision, the Oregon Family Leave Act, as well. And so how did the district court err in granting summary judgment on those claims in favor of Boeing? Well, the first issue under the medical leave statutes is the interference claim where Mr. Kelly was already on medical leave when they asked him to stay at work for an additional four hours. It's not our position that if they would have asked him during his shift to start taking the drug test, that would be fine. But once his shift ends and he's on intermittent medical leave to care for his wife, then you are interfering with someone's right to leave by asking them or actually requiring them to not utilize that leave. Well, who did he make the request for leave to? Didn't he say that he made it to somebody that had retired in 2012? Well, he stated that he did make it to his supervisor and perhaps our client may be mistaken on the name of the supervisor that he made the request to, but that's a, um, you know, something they can impeach Mr. Kelly on, but it's not a dispositive issue on, you know, if he remembers making the request, if he misstated the name or perhaps there's multiple people there with the same name. We don't know this because... Did you do any discovery to determine whether there's any record at Boeing of him making that request to anybody that still worked at Boeing? Well, the request was made verbally. He initially was placed on, approved for the medical leave several years before that and had been using intermittent leave. So he wasn't reapplying every time, but so it was just a verbal request to utilize the leave. Is there some documentation in the record that it was a FMLA intermittent leave opportunity or however you would characterize it? Um, I guess I'm not sure what you're... Did somebody at Boeing and HR say, sure, here you can take FMLA anytime you need or whatever, and it's fine. I'll just let us know when you need to do it. I mean, is there any documentation of that he applied for the intermittent FMLA leave to apply for his wife? I'm not sure what, that there was much documentation put into the record because I don't think that was a issue of dispute that he was qualified for. Okay. Okay. Did you want to save a minute for rebuttal? Yeah, please. Okay. Let's hear from Boeing. Good morning, your honors. Eric Wolf for Boeing. I will discuss the disability claim first and then the FMLA claim. Although I think the problems with the two claims are very similar because what we have here is somebody who's alleging, making a claim for accommodation sort of in the middle of a suspicious drug test. I think the question about pretext is quite reasonable. And, you know, he was accommodated to the extent that that made sense during the testing. So he was given more time. He was allowed to kind of wander about to get coffee and whatnot, but still within the context of the test. So the notion that he wasn't accommodated in any regard is not true. The testimony from Mr. Lockman, who was Boeing's head for drug-free workplace, was that the way an accommodation would work in this scenario is that they play out the three hours for each attempt at a sample. And he never got there. But if he had gone three hours unable to provide a sample, Mr. Lockman testified, then at that point you would some other way to collect. So that's a reasonable response to the situation. There's no evidence otherwise. The way that they're presenting accommodation is, you know, if you had given me my accommodation, well, then there wouldn't have been this tampering or what people thought was tampering. And then you couldn't have fired me. The district court, Judge Simon kind of cut to the chase on this whole thing and said there's no evidence that anyone was engaged in any sort of pretext about thinking that he was tampering. That everybody, there's evidence that anybody wasn't acting in good faith. The FMLA claim plays out virtually the same. Should good faith end the question? What does the finding of good faith mean? So there's a little bit of difference between the two claims, but on disability, it's the familiar sort of pretext standard. And Boeing has a legitimate, non-discriminatory reason. We thought you tampered on the drug test. And unless there's some evidence that Boeing didn't really believe that, which I would say was bad faith that they're scheming, then Boeing prevails in summary judgment. And he has no countervailing evidence to that, that anyone had any reason to think anything else. It's not as if these EMTs had it in for him. Mr. Lockman was in the Seattle area. He runs the drug-free workplace. They get him on the phone. He doesn't know Mr. Kelly. There's no history there. So without some evidence of pretext or bad faith, his claim can't survive summary judgment. On the FMLA, it's a little bit different because it's an interference claim. The protected status would need to be a negative factor. But again, he doesn't even have evidence of a negative factor. So the way it plays out is he says, when my supervisor, Mr. Whiteman, came to get me and tell me that I had to be tested, well, I told him, you know, I've already requested FMLA, which was the supposed request to Mr. McKinnon, who hadn't been with the company. You will not be surprised to learn that Boeing has an automated process for requesting leave and that you don't just sort of phone it in. But at that point, he's getting tested and there's no evidence that he was terminated because of any reason that had to do with FMLA leave. The only evidence is he was terminated because they thought he was tampering. If the court doesn't have any further questions, the district court wrote a thorough opinion that analyzed all, you know, got all the facts in there, analyzed the issues quite well, that we stand behind. What about the, his statement in deposition where he, I believe, said when he was asked, you know, you poured, you know, something from this vial into the collection cup and he said, yes. Did he later correct that? Yeah, you have that exactly right, your honor. So supplemental excerpts of record 358 is the exchange. It's exactly as you recount. It's also recounted in footnote four of the district court's opinion. My recollection of the record is later his own tried to rehabilitate him on that. And the rehabilitation is rather artful because it draws this distinction between was it a vial or was it a tube? And Mr. Kelly insists it was a tube. And then he's asked, well, you know, did you pour a vial in? And he says, no. And then in his declaration, which I'm not bringing immediately to mind at the moment, but you know, his declaration to some extent contradicted his deposition. The district court said, you know, I'm not going to let you create an issue of fact by contradicting. I understand that. But in his deposition, did he, there was an exchange about, I had my penis in one hand, I had the vial in the other, which would imply that he, you know, did dispute the characterization that he poured something into the cup. Was that in his declaration or later during the same deposition?  The representation was made by opposing counsel that it was, quote, you know, sort of cleared up in the deposition. And I just want to make sure that that's true. And I don't want to characterize what counsel said. If I'm wrong, I apologize. What I think I heard was that he cleared it up in his declaration. I assume. And that was, you know, filed on the eve of judgment. But you're just, yes, go ahead. Just to be clear, you know, the initial testimony of what occurred, which by the way, is exactly what the EMT says he observed. But the initial testimony in the deposition of Kelly, this is SER 358. You brought your left hand from your side and you have entered a vial into the collection cup. Correct. I did. Someone yawning into the mic. I keep hearing a yawn. Not me. Everybody on screen looks innocent, I have to say. Might be in the background someplace. Mr. Vance, I think your microphone is over. Okay. That must be somebody from the next argument. We're not very entertaining, apparently. If there are no further questions, I will sit down. Okay. I don't think there are. Thank you very much. Okay. I believe counsel had about a minute for rebuttal. So if you can make one or two points. Mr. Post, can you hear me? Okay. Okay. We still can't hear you. Sorry, I forgot to unmute my mic. He corrected his... I'm sure he was saying something very profound. We just didn't hear it. So he corrected his testimony at his deposition. And, you know, kind of when you review the testimony, you know, sometimes people get in these positions where they... Where? In his deposition, because precision matters. And this is a fundamental issue in your case. So give us the line and page. I can't find it in my briefing, but it was pointed out in the district court agreed that he corrected it at his depo, and therefore didn't use it against him. If it would have only been in his declaration, Judge Simon would have called the declaration a sham, which is what they requested. And he said, he didn't correct it to avoid summary judgment. He made the correction at his depo. Therefore, the sham declaration thing doesn't apply. And the only other thing I wanted to quickly point out then is that Mr. Lockman, he doesn't recall anything and he wasn't the decision maker. And the district court did rely heavily on Mr. Lockman being the decision maker. And there's no evidence that he made the decision. And he only had the authority to recommend or advise that a policy violation may have occurred. Okay. Thank you for that. And thank you for your arguments. The matter is submitted at this time. Thank you.
judges: Paez, Rawlinson, Pregerson